UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WP COMPANY LLC,
d/b/a THE WASHINGTON POST,

    Plaintiff,

        v.                             Civil Action No. 20-1082 (JEB)

U.S. DEPARTMENT OF STATE,

    Defendant.

**MEMORANDUM OPINION**

This Freedom of Information Act case barely made it out of the starting gate. In brief: the Washington Post filed a FOIA request, the State Department did not timely produce a final response, the Post initiated this lawsuit, this Court set a deadline of roughly one month for State to make its response, and, one week before that deadline, State complied, producing the requested record to the Post's satisfaction. The merits phase of this suit thus having concluded (without ever really beginning), the Post now moves for attorney fees under FOIA. Because it cannot demonstrate that it has "substantially prevailed" in this litigation, see 5 U.S.C. § 552(a)(4)(E)(i), Plaintiff is not eligible for fees and the Court will deny the Motion.

**I.    Background**

In April 2020, the Washington Post published a bombshell report revealing that State Department officials had previously warned, in unclassified cables, of safety issues at a laboratory in Wuhan, China, where researchers studied novel coronaviruses. See ECF No. 7 (Amended Complaint), ¶ 25; id., Exh. B (Article). The report fueled speculation that SARS-CoV-2 — the virus that causes COVID-19 — might have escaped from the lab. Id., ¶¶ 27–30.

1

To further pursue its investigation, on April 3, the Post submitted a FOIA request to the State Department seeking the relevant diplomatic cables and asking for expedited processing of its request. Id., ¶¶ 22–23. On April 14, State responded that expedition had been denied and that the paper's request had been "placed . . . in the simple processing track where it w[ould] be processed as quickly as possible." ECF No. 16-3 (Initial Response).

Unhappy with such delay, the Post filed this suit ten days later, challenging the denial of expedited processing as wrongful under FOIA. See ECF No.1 (Complaint), ¶¶ 31–34. It then amended its Complaint on May 14, additionally alleging that State had constructively denied its request by failing to issue a final response within twenty business days (*i.e.*, by May 1st). See Am. Compl., ¶¶ 40–47 (citing 5 U.S.C. § 552(a)(6)(A)(i)). State timely answered two weeks later on May 28. See ECF No. 9 (Answer). The next day, this Court ordered the parties to confer and submit a joint briefing schedule to govern the case. See Minute Order of 5/29/20. Unable to agree, they proposed two different timetables. See ECF No. 10 (First Joint Status Report). While the Post urged jumping straight into merits briefing, State suggested that it should first be ordered to issue a final response to Plaintiff's request. Id. at 3. It proposed a deadline of July 23, nearly six weeks later. Id. at 3. The Court adopted that date, as well as State's proposed schedule to govern briefing thereafter. See Minute Order of 6/22/20 ("By July 23, 2020, Defendant shall issue a final response to Plaintiff's FOIA request.").

On July 16, one week prior to the deadline, State issued its final response, informing the Post that it had "conducted a search and located one [responsive] record," an unclassified April 19, 2018, State Department cable. See ECF No. 16-4 (Final Response) at ECF pp. 1–5. Defendant disclosed the cable with limited redactions pursuant to FOIA Exemptions 5 and 6. Id. On the same day, it also published on its website a different cable from January 2018, also

concerning the Wuhan lab.  See ECF No. 16-1 (Declaration of Eric F. Stein), ¶ 9.  State did not include this cable in its FOIA response to the Post and currently maintains that it was "not responsive to the [paper's] FOIA request" because it was outside the date range of the request.  Id.; ECF No. 16 (Opp.) at 5 & n.1.

On July 31, the Post informed the Court that it did not wish to challenge the adequacy of the agency's search or any of its withholdings from the April 2018 cable.  See ECF No. 11 (Second Joint Status Report) at 1.  That effectively ended the merits phase of this litigation.  Plaintiff now seeks an award of reasonable attorney fees and costs expended in this matter.  See ECF No. 14 (Mot.).

## II.     Analysis

FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i); see Brayton v. Off. of the U.S. Trade Rep., 641 F.3d 521, 524 (D.C. Cir. 2011).  "This language naturally divides the attorney-fee inquiry into two prongs, which [the] case law has long described as fee 'eligibility' and fee 'entitlement.'"  Brayton, 641 F.3d at 524 (quoting Judicial Watch, Inc. v. U.S. Dep't of Commerce, 470 F.3d 363, 368–69 (D.C. Cir. 2006)).  A party is "eligible" to receive fees if it has "substantially prevailed."  Id.; Judicial Watch, 470 F.3d at 368.  If the party is eligible, the Court must then "consider[] a variety of factors" to determine whether it is "entitled" to fees.  Brayton, 641 F.3d at 524–25; Davy v. CIA, 550 F.3d 1155, 1159 (D.C. Cir. 2008).

Here, the analysis begins and ends with eligibility — that is, with whether the Post has "substantially prevailed" in this suit.  Under the Act, "a complainant has substantially prevailed if the complainant has obtained relief through" one of two means: "(I) a judicial order, or an

3

enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Prong one, as is evident in its text, requires a plaintiff to be "awarded some relief by a court, either in a judgment on the merits or in a court-ordered consent-decree." Oil, Chemical and Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy (OCAW), 288 F.3d 452, 456–57 (D.C. Cir. 2002) (cleaned up); see also Brayton, 641 F.3d at 525. By contrast, prong two, known as the "catalyst theory," does not require the plaintiff to "win[] court-ordered relief on the merits." Brayton, 641 F.3d at 525. Instead, he can secure fees "by showing that [his] lawsuit substantially caused the government to release the requested documents before final judgment." Grand Canyon Tr. v. Bernhardt, 947 F.3d 94, 96 (D.C. Cir. 2020) (quotation omitted).

The Post's argument for fees here does not find a clear home under either of the two prongs. Its opening brief refers to the "catalyst theory," Mot. at 6, and contends that the Court's June 22 Minute Order requiring State to "issue a final response to Plaintiff's FOIA request" by July 23 "led directly to" — i.e., catalyzed — "the release of the specific documents that the Post sought." Id. at 6–7. Its reply brief similarly maintains that "this lawsuit clearly caused the State Department to release records." ECF No. 17 (Reply) at 6. This, of course, is a prong-two argument. But the Post's key case, Davy v. CIA, 456 F.3d 162 (D.C. Cir. 2006), which it contends is "on all fours" with this one, see Mot. at 6, Reply at 4, is a prong-one case. The plaintiff there had substantially prevailed because the district court had issued an order amounting to "an 'enforceable judgment' on the merits of his complaint." 456 F.3d at 166 (quoting Edmonds v. FBI, 417 F.3d 1319, 1322–23 (D.C. Cir. 2005), another prong-one case). And if that were not enough, Davy was decided at a time when the catalyst theory was not even

4

good law, having been scrapped by the Circuit in the early 2000s before being reenacted by Congress in 2007.  See Grand Canyon Tr., 947 F. 3d at 96 (explaining this history).  The Post's insistence that "[t]his Court's June 22 Minute Order is . . . on all fours with the order in Davy that satisfied the requirements for substantially prevailing," Reply at 4, thus reads like an argument that the Court's Order satisfies prong one, as the order in Davy did.

Ultimately, and perhaps unsurprisingly given the Post's apparent vacillation between positions, the Court finds that neither prong is satisfied here.

    A.  Prong One

Begin with prong one.  Plaintiff seems to contend that the Court's June 22 Minute Order, which set a deadline for a final agency response to its FOIA request, rendered the Post a prevailing party in this suit.  "[A] favorable order," though, "does not make a plaintiff a prevailing party [under prong one] unless the order constitutes judicial relief on the merits resulting in a 'court-ordered change in the legal relationship between the plaintiff and the defendant.'"  Campaign for Responsible Transplantation v. FDA, 511 F.3d 187, 194 (D.C. Cir. 2007) (quoting Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Hum. Res., 532 U.S. 598, 604 (2001)).  An order that is "procedural — [*e.g.*,] conduct a search — as opposed to substantive — [*e.g.*,] produce documents" — does not qualify.  Davy, 456 F.3d at 165 (citing OCAW, 288 F.3d at 458).  The Minute Order here, which simply required the agency to respond to Plaintiff's FOIA request, falls on the procedural side of that line.  See OCAW, 288 F.3d at 458 (order requiring agency to "complete its record review" by a date certain was procedural); Campaign, 511 F.3d at 195–96 (same for order to produce or edit a Vaughn index).

Davy, on which the Post's prong-one argument (such as it is) entirely relies, is not to the contrary.  There, after the filing of the complaint, the plaintiff and defendant "reached a Joint

5

Stipulation for the production of responsive documents. The district court approved [it] and memorialized it in a court order . . . . provid[ing] that the '[agency] w[ould] provide Plaintiff all responsive documents, if any' . . . by certain dates." 456 F.3d at 163–64 (citation omitted). The Court of Appeals held that the plaintiff had substantially prevailed as of the issuance of that order, which "provide[d] [him] with the precise relief his complaint sought — 'mak[ing] the requested information promptly available.'" Id. at 165 (alteration in original) (citation omitted). The order, the decision went on to explain, was "almost indistinguishable from the Edmonds order," which satisfied prong one by "requir[ing] the FBI to 'provide plaintiff with all documents as to which no exemption is being claimed.'" Id. at 166 (citing 417 F.3d at 1321).

Unlike in Davy and Edmonds, however, the Court here never ordered the government to produce responsive records by a date certain. Rather, it merely ordered State to issue a final response — i.e., a "determin[ation] . . . whether to comply with [the Post's] request" and "notif[ication]" of the decision and its reasoning to the paper. See 5 U.S.C. § 552(a)(6)(A)(i). That is the crucial difference. See Judicial Watch, Inc. v. FBI, 522 F.3d 364, 369 (D.C. Cir. 2008) (distinguishing Davy and Edmonds from OCAW on grounds that OCAW order was not, by its terms, "a directive to disclose documents"). In Davy and Edmonds, moreover, the relevant court orders were, respectively, an order adopting a joint stipulation and a summary-judgment order. See Davy, 456 F.3d at 163–64, 166 (calling the stipulation an "enforceable judgment on the merits") (cleaned up); Edmonds, 417 F.3d at 1320–21. Plaintiff cites no authority involving a routine scheduling order such as the one at issue here, which "simply forwarded the litigation process." Campaign, 511 F.3d at 194. Prong one is thus unavailing.

B. Prong Two

Even if no Court order directly provided it relief, Plaintiff would alternatively posit, surely its lawsuit led to the cable's release and thus satisfies prong two. Here, the Post "has the burden of showing that it is more probable than not that the government would not have performed the desired act" — here, releasing the April 2018 cable — "absent the lawsuit." Grand Canyon Tr., 947 F.3d at 97 (citation omitted); see also Brayton, 641 F.3d at 524–25 (plaintiff must show suit "substantially caused the government to release the requested documents"). Critically, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." Dorsen v. SEC, 15 F. Supp. 3d 112, 118 (D.D.C. 2014) (quoting Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1496 (D.C. Cir. 1984)). "[S]omething more than [p]ost hoc, ergo propter hoc" must be offered. Cox v. Dep't of Justice, 601 F.2d 1, 6 (D.C. Cir. 1979).

That something more is missing here. Aside from the sequence of events, there is no reason to think that State would have failed to release the April 2018 cable had the Post not filed its lawsuit. Upon receiving the FOIA request (and prior to this suit's commencement), the Department notified the Post that it would be "processed as quickly as possible." Initial Response. That seems to have occurred: according to a recent affidavit submitted by a Department official — which is "accorded a presumption of good faith," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) — the "State Department processed the responsive record as quickly as it could." Stein Decl., ¶ 8. The Post offers no reason to doubt that statement. At the conclusion of the agency's search, moreover, it released the cable to the Post's satisfaction; Plaintiff did not challenge the scope of the search or the propriety of any withholdings. Cf. Grand Canyon Tr., 947 F.3d at 97 (considering this fact under catalyst prong).

7

Given these basic facts, it is hard to see how this "lawsuit was <u>necessary</u> for its attainment of the" cable, as the Post bears the burden to prove. See <u>Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice</u>, 83 F. Supp. 3d 297, 307 (D.D.C. 2015). It seems more likely, in fact, that "the documents would have been processed in the same manner," with the same result, regardless of whether litigation was filed. <u>Codrea v. ATF</u>, 272 F. Supp. 3d 49, 53 (D.D.C. 2017) (citation omitted).

Plaintiff points out that the agency produced the cable only a week before the Court-ordered deadline of July 23, 2020. But it was State that recommended that deadline in the first place, which the Court effectively rubberstamped and to which the Post did not object. See First Joint Status Report at 2–3. Far from "suggest[ing] [the agency] would fail to comply with the request," State's actions — offering up its own deadline and then complying a week ahead of time — seem equally if not more consistent with the opposite intention. <u>Grand Canyon Tr.</u>, 947 F.3d at 97 (considering that agency "gave the plaintiff [its] prediction[] as to when production would be completed").

The Post also focuses on what it asserts is an admission, in Defendant's Answer, that State had yet to search for the requested cable(s) as of May 28, 2020. See Answer, ¶ 13 ("To the extent [the Complaint] alleges the existence of [responsive records] . . . the State Department will conduct a reasonable search for responsive records and will produce any non-exempt material contained in such records."). This shows, according to Plaintiff, that this lawsuit prompted the eventual search and production and was thus necessary to end State's "stonewall[ing]" and "refus[al]" to take such steps. See Mot. at 6; Reply at 5–6.

This does not cut the mustard. Off the bat, it is not obvious from Defendant's boilerplate FOIA-speak that it had yet to begin addressing Plaintiff's request. State might have made initial

preparations for a search, been in the middle of a search, or been close to completing a search it was not yet comfortable labeling as "reasonable" in a court filing. Even assuming that Defendants had taken no action as of May 28, though, this would not get Plaintiff over the hump. Indeed, that fact might hurt the Post more than it helps: if the agency had done nothing by May 28 despite Plaintiff's filing over a month earlier, on April 24, it is hard to see how the filing or prosecution of the suit could be said to have prompted a change in the agency's behavior. It would seem as likely, again, that State just continued along the path it had been on prior to the suit, processing and ultimately fulfilling Plaintiff's request "as quickly as it could." Stein Decl., ¶ 8. At any rate, even if one rejects that view, the Post's argument still boils down to nothing more than timing: State had not begun its work prior to the suit, then the suit was filed, and then State began the process that led to the cable's release. Concluding merely from those events that the lawsuit caused the cable's disclosure is *post hoc ergo propter hoc* reasoning, and in this context, "[c]ausation requires more than correlation." Dorsen, 15 F. Supp. 3d at 118.

In short, then, the Post has not met its burden to demonstrate that its lawsuit was a but-for cause of the release of the April 2018 State Department cable. For completeness, the Court notes that Plaintiff has not made an expedition argument here — *i.e.*, that regardless of whether its suit caused the release of a document that State otherwise would not have released, it at least caused its release to occur substantially more quickly. The Circuit has not ruled on whether an agency's speedier release of records can qualify as a "voluntary or unilateral change in position," 5 U.S.C. § 552(a)(4)(E)(ii), sufficient to substantially prevail under the catalyst theory. See Grand Canyon Tr., 947 F.3d at 97–98. It is clear enough here, in any event, that the Post does not rely on this argument: State contended as much in its opposition brief, see Opp. at 6, and the Post did not dispute it on reply. See Reply at 4–6.

### III.     Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order denying Plaintiff's Motion for Attorney Fees.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 9, 2020